## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

**BRIAN BARNES**, individually and on behalf of all others similarly situated,

        *Plaintiff*,

v.

**AEGIS CAPITAL CORP.,** a New York Corporation,

        *Defendant*.

-----------------------------------------------------X

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Brian Barnes ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Aegis Capital Corp., ("Aegis") to stop its practice of making unsolicited telephone calls to the telephones of consumers nationwide who are registered on the Do Not Call Registry (the "DNCR") and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.     Defendant is Aegis Capital, a New York corporation.

2.     In an attempt to market and sell its services, within a single year, Defendant made multiple unsolicited promotional telephone calls to the landline and cellular telephones of Plaintiff and the other members of the putative Class who are registered on the DNCR. This violates the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.     By making the telephone calls at issue in this Complaint, Defendant caused

Plaintiff and the other members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the placement and receipt of such calls, among other harms.

4.      The TCPA was enacted in part to protect consumers who registered on the DNCR from, among other things, receiving more than one unsolicited phone call to their residential landlines and/or cellular telephones within a 12-month period from any one entity to whom they have not given prior consent, and with whom they have not done business—exactly like the calls alleged in this case.

5.      In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6.      Plaintiff Brian Barnes, is a natural person and resident of Hewitt, Wisconsin.

7.      Defendant Aegis Capital Corp. is a corporation organized under the laws of the state of New York with its principal place of business located at 810 7th Ave, 18th & 22nd Floor, New York, NY 10019.

8.      Defendant conducts business throughout this District, the State of New York, and the United States.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 *et seq*., as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business

2

in this District, conducts a significant amount of business in this District, solicits consumers in this District, made and continues to make unsolicited calls in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is registered to conduct business in this District, it conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

**COMMON FACTUAL ALLEGATIONS**

11.     Defendant Aegis is a financial brokerage firm. Upon information and belief, Defendant purchases lists of consumers to call without receiving their prior express consent.

12.     In recent years, financial firms such as Aegis have turned to unsolicited telemarketing as a way to increase their customer bases as they seek to expand their reach. Widespread telemarketing is a primary method by which Defendant recruits new customers.

13.     A recent article in an industry publication describes the process in detail:

> Armed only with the names of business owners on index cards, trainees call leads, using scripts that haven't been updated in years. "Let's not kid each other, I didn't just pick up the phone book and dial your number," one script obtained from an ex-Meyers broker reads. "Opportunities like this do not come along every day." When a person answers and doesn't hang up, the trainees tout their Wall Street addresses and say their boss will call back with one good stock tip. The boss then calls to recommend a well-known stock. A few months later they'll pressure investors to sell and switch into other shares, charging commissions of about 3 percent on each trade. [1]

14.     The article specifically mentions Aegis as engaging in this practice.

---

1.  http://www.bloomberg.com/news/articles/2014-01-30/wall-street-is-hub-for-cold-calling-stock-brokerages

15.     Upon information and belief, in its telemarketing calls Aegis is attempting to create the illusion of a prior relationship with the consumer by claiming to be "returning a call," when it is, in fact, cold calling.

16.     Online consumer complaints related to Aegis' telemarketing calls and deceptive tactics are numerous. A few of the complaints are:

- Matt with Aegis Capital called and left a message to call back, no subject, call not returned.  They seem to call every few months, probably cold-selling private investments, ignoring the do-not-call list.[2]

- Aegis Capital cold calling. Do your homework on brokercheck on them.[3]

- This is an investment call center located in Manhattan, NY. I am so tired of investment and other telemarketers call and pretend to be someone they are not. They are rude to staff and think we are stupid.[4]

- Guy name David demanded to speak someone in our company and stated he was calling Aegis,  "Just put him on the phone. " he barked.  He promptly hang up when asked for his number.[5]

- He said he was Sean with Agis (sp?). I see from google this was a telemarkter - a company called Allen Gunn Financial. Note to you rude New York  telemarketers - there us such a thing as Southern Hospitality, and it doesn't include being pushed around. My boss expects me to screen all calls. The only thing standing between you and the person you are trying to call is - me.You don't want to make me mad. We care about what our bosses tell us to do, not you. Do not assume the person answering the phone is an underling who can be fooled into passing your call on. Also, for furutre reference, we log your calls, so don't expect to call back and try to fool us again. If my boss wanted financial advise, he would not be going to a New York company when we are located in South Carolina. Can't imagine you have any luck with this sales tactic.[6]

- Received a call from this number several times.  Guy asks for my manager.  When I tell this RUDE person that he is unavailable and ask if there is something that I can help him with I get "No Messages" and the RUDE person, guy, man or whatever

2 http://800notes.com/Phone.aspx/1-212-806-6300/4
3 http://800notes.com/Phone.aspx/1-516-221-6600/2
4 https://www.callercenter.com/212-806-6300.html
5 http://whocallsme.com/Phone-Number.aspx/2128066300
6 http://800notes.com/Phone.aspx/1-212-806-6300/5

> hangs up in my ear as in slams the phone down.  These people need to be stopped.
> My manager and I don't have time to listen to these cold calls.  We are not sure how
> they got my manager's name anyway.  RUDE, RUDE, RUDE, RUDE but what do
> you expect.  My manager said to hang up on him next time and keep hanging up
> until he gets the message.[7]

- Annoying yet funny these calls are.  This one I just got was Sam Pryor with Aegis
  Capital 212-806-6351, he wanted to know if my boss was here, he was returning his
  call?  Good grief, I wonder how many fall for that line![8]

- Aegis Capital, called me by name. Wonder where they get the info? pushy, pushy,
  said I had talked to someone earlier this year and this was a callback. Lie. Said he
  wants to set up a time to talk "later this week" (it's Friday) or next week. Said I'm not
  interested, whatever it is. He said you're invested in the capital markets, aren't you? I
  said I'm not ever going to tell you or anyone else anything about anything. Hung up
  on me.[9]

- Just got a call from this number.  The caller identified himself as Garth (the last
  name was hard to make out over the phone) and said he's a Wall Street investment
  banker.  I said I didn't have time to talk and hung up.  When I checked this site and
  saw the name Gunn Allen, I remembered these guys pestered me a few years ago in
  an effort to invest money with their firm.  My answer today would be the same;
  namely, I invest solely in my company's 401K plan.[10]

17.    Defendant and/or its agent places repeated and unwanted calls to consumers whose

phone numbers are registered with the DNCR. Consumers register their phone numbers on the

DNCR for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

Defendant does not check its numbers against the DNCR, and does not remove from its

telemarketing lists the numbers of consumers who are on the DNCR. Furthermore, Defendant

and/or its agents are not processing users' demands to not be called once they have been called.

18.    At all times material to this Complaint, Defendant was and is fully aware that

unsolicited telemarketing calls are being made to consumers' residential landlines and cellular

telephones through its own efforts and their agents.

---

7 http://800notes.com/Phone.aspx/1-212-806-6300/5
8  http://800notes.com/Phone.aspx/1-212-806-6300/5
9 http://800notes.com/Phone.aspx/1-212-806-6300/5
10 http://800notes.com/Phone.aspx/1-212-806-6300/5

19.     Defendant knowingly made (and continues to make) unsolicited telemarketing calls without the prior express consent of the call recipients and knowingly continued to call them after requests to stop. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF BRIAN BARNES

20.     Plaintiff is a natural person residing in Hewitt, Wisconsin.

21.     On July 1, 2003 Plaintiff registered his landline phone number on the DNCR specifically to avoid telemarketing calls.

22.     Starting in or about September 2015, Plaintiff began receiving multiple calls on his landline telephone from various Aegis Capital phone numbers, including (516) 221-6600.

23.     When he answered their calls initially, the person on the line would identify themselves as from Aegis Capital Corp.

24.     Most disturbingly, the caller would claim that they had spoken with the Plaintiff previously.

25.     When he initially answered Aegis' call, he told the caller that he was not interested, that he never requested for them to call him, that he was registered on the DNCR, and never to call him again.

26.     Still, the calls continued. Plaintiff received approximately two to four calls every month for a period of at least nine months.

27.     The calls were annoying and harassing.

28.     Upon information and belief, the Defendant obtained his landline telephone number from a list it had purchased.

29.     Plaintiff does not have a relationship with Defendant, has never provided his landline telephone number directly to Defendant, or ever requested that Defendant place calls to him or offer him its services. Simply put, Plaintiff has never provided his prior express consent to Defendant to place calls to him and has no business relationship with Defendant.

30.     As a result of Defendant's repeated intrusive and unwanted telemarketing calls within a 12-month period, Plaintiff suffered actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of his phone.

31.     At the time it called Plaintiff on May 3, 2016 from (516) 221-6600, Defendant was aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the DNCR.

32.     Each time it called Plaintiff after the first call in September 2015, Defendant was also aware that it had placed more than one telemarketing call to Plaintiff's number within a 12-month period.

**CLASS ALLEGATIONS**

33.     Plaintiff brings this action on behalf of himself and the classes defined as follows (the "Classes"):

> **No Consent-DNC Class:** All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days, (2) who thereafter received more than one telephone call made by or on behalf of Defendant within a 12-month period starting May 31, 2012 to the present, and (3) for whom Defendant obtained prior express consent to call in the same manner as Defendant claims it obtained consent to call the Plaintiff.

> **Stop Calling DNC Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendant within a 12-month period from May 12, 2012 to the present; and (3) who requested that Defendant not call them again (4) and who received at

least one additional call from Defendant at least 30 days following the request that the calls stop.

Excluded from the Classes are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) the legal representatives, successors, or assigns of any such excluded person, and (5) Plaintiff's counsel and Defendant's counsel.

34.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

35.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

      (a)    Whether Defendant systematically made telephone calls to members of the Classes who Defendant claims gave prior express consent in the same manner as Plaintiff supposedly gave prior express consent;

      (b)    Whether Defendant systematically made telephone calls to members of the Classes whose telephone numbers were registered with the DNCR;

      (c)    Whether Defendant's conduct constitutes a violation of the TCPA; and

(d)     Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

36.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

37.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiff and the No Consent-DNC Class)**

38.     Plaintiff incorporates the foregoing factual allegations as if fully set forth herein.

39.     47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

40.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

41.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the

time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

42.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to residential telephone subscribers such as Plaintiff and the No Consent-DNC Class members who registered their respective telephone numbers on the DNCR. These consumers requested to not receive calls from Defendant as set forth in 47 C.F.R. § 64.1200(d)(3).

43.    Defendant made more than one unsolicited telephone call to Plaintiff within a 12-month period without Plaintiff's prior express consent to receive such calls. Defendant also made more than one unsolicited telephone call to each member of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the No Consent Do Not Call Class never provided any form of consent to receive telephone calls from Defendant,

oral or written, and/or Defendant does not have a current record of consent to place telemarketing calls to them. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone calls in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

44.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential telephone subscribers, such as Plaintiff and the No Consent-DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them, by not maintaining a written policy, available on demand, for maintaining a do not call list, and by not informing and training its personnel engaged in any aspect of telemarketing in the existence and use of its internal do-not-call list.

45.     As a result of Defendant's unlawful conduct, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each member of the No Consent Do Not Call Class are each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiff and the Stop Do Not Call Class)**

46.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

47.     Defendant violated 47 C.F.R. §64.1200 by initiating calls for telemarketing purposes to residential telephone subscribers such as Plaintiff and the Stop Do Not Call Class who were registered on the national do not call registry and who specifically told Defendant to stop calling them, and who received at least one call more than 30 days after informing Defendant to

stop calling them. Defendant made these calls without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them and by failing to adequate inform and train its personnel in the existence and use of the do not call list.

48.      As a result of Defendant's and unlawful conduct, Plaintiff and the Stop Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each member of the Class is each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

**THIRD CAUSE OF ACTION**
**Knowing and/or Willful Violations of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the No Consent-DNC Class)**

49.      Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

50.      Defendant knowingly and/or willfully initiated, or caused to be initiated, telephone solicitations to residential telephone subscribers such as Plaintiff and the No Consent-DNC Class members who registered their respective telephone numbers on the DNCR and who received more than one call within a 12-month period.

51.      Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

52.      As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the No Consent Do Not Call Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

### FOURTH CAUSE OF ACTION
### Knowing and/or Willful Violations of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Stop Do Not Call Class)

53.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

54.     Defendant knowingly and/or willfully initiated, or caused to be initiated, telephone solicitations to residential telephone subscribers such as Plaintiff and the Stop Do Not Call Class members who registered their respective telephone numbers on the DNCR and who received more than one call within a 12-month period from Defendant *after* informing Defendant to stop calling them.

55.     Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

56.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Stop Do Not Call Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

1.     An order certifying the Classes as defined above, appointing Plaintiff Brian Barnes as the representative of the Classes, and appointing his counsel as Class Counsel;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendant and their agents to cease all unsolicited telephone calling activities, to honor do not call requests, and to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

4.      A declaratory judgment declaring that Defendant's calls violated the TCPA, that

Defendant did not institute procedures that comply with the regulatory minimum standards for

maintaining a list of persons who ask not to be called, and that Defendant failed to scrub its call

list of persons whose phone numbers were registered on the DNCR,

5.      An award of reasonable attorneys' fees and costs; and

6.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**BRIAN BARNES**, individually and on behalf of
class of similarly situated individuals

Dated: June 16, 2016                    By:  ___/s/ Stefan Coleman

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: 877.333.9427
Fax: 888.498.8946

Steven L. Woodrow*
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com

*Motion for admission *pro hac vice* to be filed